Ken Ciccoli, Bar No. 2211118
Inlet Law, LLC
818 Smoky Bay Way, PMB 324,
Homer, AK 99603
(907) 299-6572
Ken.Ciccoli@inlet-law.com
Attorney on behalf of Amicus Curiae

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| GROUNDFISH FORUM INC., <br>        Plaintiff, <br>   v. <br> NATIONAL MARINE FISHERIES <br> SERVICE, *et al.*, <br>        Defendants, <br>   and <br><br> CENTRAL BERING SEA <br> FISHERMAN'S ASSOCIATION, et <br> al., <br><br>        Intervenor-Defendants. | Case No. 3:23-cv-00283-JMK |

**MOTION OF CORDOVA DISTRICT FISHERMEN UNITED, KODIAK
ARCHIPELAGO RURAL REGIONAL LEADERSHIP FORUM, PRINCE
WILLIAM SOUND ECONOMIC DEVELOPMENT DISTRICT, AND
INDIVIDUALS AVERY AULT, DANIEL DONICH, GREG SUTTER,
RICHARD BALTZER, AND EMILY AULT FOR LEAVE TO FILE A BRIEF AS
*AMICI CURIAE* IN SUPPORT OF DEFENDANTS**

Case 3:23-cv-00283-JMK   Document 42   Filed 06/27/24   Page 1 of 45

Cordova District Fishermen United, Kodiak Archipelago Rural Regional Leadership Forum, Prince William Sound Economic Development District, and individuals Avery Ault, Daniel Donich, Greg Sutter, Richard Baltzer, and Emily Ault ("*Amici Curiae*") respectfully move this Court to enter an order allowing *Amici Curiae* to file the Brief of *Amici Curiae* lodged with this motion.[1] Collectively, the *Amici curiae* are Alaskan organizations, and individuals, whose economies and ways of life depend on the Pacific halibut. *Amici Curiae's* brief supports Defendants by addressing the importance of the Pacific halibut stock to coastal Alaskan communities and individuals.

"The district court has broad discretion to appoint amici curiae," and amicus briefs should normally be allowed "when the amicus has unique information or perspective that can help the court beyond the help that the lawyers for the parties are able to provide."[2]

At issue is in this litigation is Amendment 123, and the bycatch limitations imposed by Defendants which support a healthy and sustained Pacific halibut

---

[1] Exhibit 1.

[2] *Alaska R.R. Corp. v. Flying Crown Subdivision Addition No. 1 & Addition No. 2 Prop. Owners Ass'n*, No. 3:20-CV-00232-JMK, 2021 WL 1112382, at *3 (D. Alaska Mar. 23, 2021) (citations omitted).

Case 3:23-cv-00283-JMK   Document 42   Filed 06/27/24   Page 2 of 45

stock. The *Amici Curiae* are all impacted by the Pacific halibut fishery. The prospectives provided by the *Amici Curiae* are personal and substantial. The brief lodged with this motion describes the lifestyles of various members of the Pacific halibut fishing community and hopes to convey an understanding of the coastwide implications on those community members should Amendment 123 be vacated. For example, amicus curiae Cordova District Fishermen United is a membership organization representing the interests of roughly 900 Alaska commercial fishermen and their individual fishing businesses. Likewise, amicus curiae Avery Ault is an individual and charter fisherman living in Homer, Alaska. Avery Ault has worked on halibut charters his entire career, and he relies on a heathy Pacific halibut stock for his livelihood and well-being.

Counsel for *Amici Curiae* contacted attorneys for all parties prior to filing this motion to request their position. Plaintiffs elect to review this motion and attached brief and inform of their position through a filed response. The Federal Defendants take no position. The Intervening Defendants consent to the motion.

Because the Amici Curiae have unique information and perspectives on the communal, cultural, and economic impacts of Amendment 123 that can help the court beyond the help that the lawyers for the parties are able to provide, Amici

Case 3:23-cv-00283-JMK   Document 42   Filed 06/27/24   Page 3 of 45

Curiae pray the Court grant this motion, allowing them to file the brief attached hereto.

DATED: June 27, 2024

INLET LAW, LLC
Amicus Curiae

Ken Ciccoli
Alaska Bar No. 2211118

## DISCLOSURE STATEMENT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 7.1

Cordova District Fishermen United is a nonprofit corporation organized under the laws of Alaska and headquartered in Cordova, Alaska. Cordova District Fishermen United has no parent company; no publicly held company has 10% or greater ownership interest in Cordova District Fishermen United.

Kodiak Archipelago Rural Regional Leadership Forum is a consortium and is not organized under the laws of any state. Kodiak Archipelago Rural Regional Leadership Forum has no parent company; no publicly held company has 10% or greater ownership interest in Kodiak Archipelago Rural Regional Leadership Forum.

Prince William Sound Economic Development District is a non-profit corporation organized under the laws of Alaska and headquartered in Cordova,

Alaska. Prince William Sound Economic Development District has no parent company; no publicly held company has 10% or greater ownership interest in Prince William Sound Economic Development District.

DATED: June 27, 2024

INLET LAW, LLC
Amicus Curiae

_____
Ken Ciccoli
Alaska Bar No. 2211118

## CERTIFICATE OF COMPLIANCE WITH LENGTH LIMIT AND TYPEFACE AND TYPE-STYLE REQUIREMENTS

In accordance with Local Civil Rule 7(a), this *Amicus* Brief, excluding the sections identified in Local Civil Rule 7.4(a)(4), contains 2,961 words.

This Amicus Brief complies with the typeface and type-style requirements of Local Civil Rule 7.5 as because it is typed in 13-point Palatino Linotype font.

DATED: June 27, 2024

INLET LAW, LLC
Amicus Curiae

_____
Ken Ciccoli
Alaska Bar No. 2211118

Case 3:23-cv-00283-JMK   Document 42   Filed 06/27/24   Page 5 of 45

## CERTIFICATE OF SERVICE

I served a true and correct copy of the foregoing on all parties. This document was served electronically through the Court's CM/ECF System.

DATED: June 27, 2024

INLET LAW, LLC
Amicus Curiae

_____
Ken Ciccoli
Alaska Bar No. 2211118

# LIST OF EXHIBITS

**Exhibit 1:** Brief of *Amici Curiae*, Cordova District Fishermen United, Kodiak Archipelago Rural Regional Leadership Forum, and Individuals Avery Ault, Daniel Donich, Greg Sutter, Richard Baltzer, Emily Ault, In Support of Defendants

**Exhibit 2:** City and Borough of Sitka Resolution No. 2024-13;

**Exhibit 3:** Petersburg Borough, Alaska Resolution 2024-08;

**Exhibit 4:** City of Homer, Alaska Resolution 24-073;

**Exhibit 5:** City of Cordova, Alaska Resolution 06-24-26

**Exhibit 6:** City of Seldovia, Alaska Resolution 24-39

**Exhibit 7:** Kodiak Archipelago Rural Regional Leadership Forum Resolution 01-2024, A Resolution in Support of Amendment 123 to the Fishery Management Plan (FMP) for Groundfish of the Bering Sea and Aleutian Islands (BSAI) Management Area

**Exhibit 8:** City of Adak Resolution 2024-005

# UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ALASKA

GROUNDFISH FORUM INC.,

          Plaintiff,

    v.

NATIONAL MARINE FISHERIES
SERVICE, *et al*.,

          Defendants,

    and

CENTRAL BERING SEA
FISHERMAN'S ASSOCIATION, et al.,

          Intervenor-Defendants.

Case No. 3:23-cv-00283-JMK

[PROPOSED] ORDER
GRANTING LEAVE TO
CORDOVA DISTRICT
FISHERMEN UNITED, KODIAK
ARCHIPELAGO RURAL
REGIONAL LEADERSHIP
FORUM, PRINCE WILLIAM
SOUND ECONOMIC
DEVELOPMENT DISTRICT, AND
INDIVIDUALS AVERY AULT,
DANIEL DONICH, GREG
SUTTER, RICHARD BALTZER,
AND EMILY AULT TO FILE A
BRIEF AS *AMICUS CURIAE* IN
SUPPORT OF DEFENDANTS

The Amici curiae, Cordova District Fishermen United, Kodiak Archipelago Rural Regional Leadership Forum, Prince William Sound Economic Development District, and individuals Avery Ault, Daniel Donich, Greg Sutter, Richard Baltzer, and Emily Ault, have demonstrated their reliance on the Pacific halibut stock and their unique perspectives which may help this Court in rendering its decision.

IT IS THEREFORE ORDERED:

The Motion of Cordova District Fisherman United, Kodiak Archipelago Rural Regional Leadership Forum, Prince William Sound Economic Development District, and individuals Avery Ault, Daniel Donich, Greg Sutter, Richard Baltzer, Emily Ault for Leave to File a Brief as Amici Curiae in Support of Defendants is **GRANTED.**

Additionally, the brief lodged with the motion is accepted for review by the Court.

DATED this _____ day of _____, 2024, at Anchorage, Alaska.

_____
JOSHUA M. KINDRED
United States District Judge

Ken Ciccoli, Bar No. 2211118
Inlet Law, LLC
818 Smoky Bay Way, PMB 324,
Homer, AK 99603
(907) 299-6572
Ken.Ciccoli@inlet-law.com
Attorney on behalf of Amici Curiae

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| GROUNDFISH FORUM INC., | |
| Plaintiff, | Case No. 3:23-cv-00283-JMK |
| v. | |
| NATIONAL MARINE FISHERIES | BRIEF OF *AMICI CURIAE*, |
| SERVICE, *et al*., | CORDOVA DISTRICT FISHERMEN |
| Defendants, | UNITED, KODIAK ARCHIPELAGO |
| and | RURAL REGIONAL LEADERSHIP |
| | FORUM, PRINCE WILLIAM SOUND |
| CENTRAL BERING SEA FISHERMAN'S | ECONOMIC DEVELOPMENT |
| ASSOCIATION, et al., | DISTRICT, AND INDIVIDUALS |
| | AVERY AULT, DANIEL DONICH, |
| | GREG SUTTER, RICHARD |
| Intervenor-Defendants. | BALTZER, AND EMILY AULT, IN |
| | SUPPORT OF DEFENDANTS |

**BRIEF OF *AMICI CURIAE*, CORDOVA DISTRICT FISHERMEN UNITED, KODIAK ARCHIPELAGO RURAL REGIONAL LEADERSHIP FORUM, PRINCE WILLIAM SOUND ECONOMIC DEVELOPMENT DISTRICT AND INDIVIDUALS AVERY AULT, DANIEL DONICH, GREG SUTTER, RICHARD BALTZER, EMILY AULT, IN SUPPORT OF DEFENDANTS**

GROUNDFISH F. V. NAT'L MARINE
FISHERIES SERV., ET AL, AND CENT.
BERING SEA FISHERMAN'S ASS'N.

i

CASE NO. 3:23-cv-00283-JMK

**TABLE OF CONTENTS**

I.      PREFACE: HALIBUT FISHING IN ALASKA'S WATERS....………………… 1

II.     INTERESTS OF AMICI CURIAE…………………….....................................… 3

III.    BACKGROUND……………………………………………………………… 8

IV.     THE REGULATION AND IMPACT…………………………………….....  11

V.      CONCLUSION ……………………………………………………………… 16

VI.     CERTIFICATES AND DISCLOSURES…………………………………….... 17

# TABLE OF AUTHORITIES

Alaska Department of Fish & Game, *Pacific Halibut: Wildlife Notebook Series*, (2007)…………………………...............……………………………………..….9

Alaska Wildlife Alliance, *November 18. 2021 Help Reduce Halibut Bycatch*, - https://www.akwildlife.org/news/2021/11/17/reducinghalibutbycatch#:~:text= About%203.3%20million%20pounds%20of,other%20no   n%2Dfish%20species) (last visited June 8, 2024)………...…………………………………………………….10

Alderstein, Trumble, *Pacific Halibut bycatch in Pacific cod fisheries in the Bering Sea: an analysis to evaluate area-time management*, Journal of Sea Research 39, 153-166 (1998)…………………………………………………………………………....11

Andrew Sietz, Branda Norcross, Derek Wilson, and Jennifer Nielsen, *Identifying Spawning Behavior in Pacific Halibut, Hippoglossus stenolepis, using electronic tags*, Environmental Biology of Fishes, 73, 445-451 (2005)………………………………9

Barabara Hutniczak, *Assessing cross-regional flows of economic benefits: A case study of Pacific halibut commercial fishing in Alaska*, 255, Fisheries Research (2022) https://doi.org/10.1016/j.fishres.2022.106449..........................................................2

Carpi, et al., *Ontogenetic and spawning migration of Pacific halibut: a review*, Reviews in Fish Biology and Fisheries, 31, 879-908 (2021)………...………………………...9

*Fishery, Climate, and Ecological Effects on Pacific Halibut Size-at-age*, Gordon Kruse, University of Alaska Fairbanks,https://www.uaf.edu/cfos/research/projects/fisheryclimateandeco/#:~:text=Despite%20their%20reputation%20as%20a,than%2045%20pou nds%20in%202013. (Last visited June 8, 2024)…………......….…...2

Fisheries of the Exclusive Economic Zone Off Alaska; Bering Sea and Aleutian Islands Halibut Abundance Based Management of Amendment 80 Prohibited Species Catch Limit, 88 Fed., Reg. 82,740, 42 (Nov. 24, 2023) (codified at 50 C.F.R. § 679.21(b)(1)(i)(A)-(C) and 50 C.F.R. § 679.91)…………………….…..…..…...3, 11

Groundfish f.  v. Nat'l Marine          Case No. 3:23-cv-00283-JMK
Fisheries Serv., et al.          iii
Case 3:23-cv-00283-JMK   Document 42   Filed 06/27/24   Page 12 of 45
Exhibit 1 000003

Hutniczak, B., *Pacific Halibut Market Profile*. IPHC-2021-ECON-06R01 https://www.iphc.int/uploads/pdf/economics/2021/iphc-2021-econ-06.pdf (2022)…..................................................................................................................15

Hutniczak, B. *Pacific Halibut Multiregional Economic Impact Assessment (PHMEIA): projectreport*,IPHC-2022-SRB020-09 (2022).Https://www.iphc.int/uploads/pdf/srb/srb020/iphc-2022-srb020-09.pdf …………………….……………………12, 13, 14

Int'l Pac. Halibut Comm'n, *Distribution and Abundance of Juvenile Halibut in the Southern Bering Sea*, Scientific Report No. 62, at 4 (1977)……………...………….3

Municipality Resolutions, including Petersburg Borough, Alaska Resolution 2024-08; City of Homer, Alaska Resolution 24-073; City and Borough of Sitka Resolution No. 2024-13; City of Cordova, Alaska Resolution 06-24-26; City of Seldovia Resolution 24-39: City of Adak, Resolution 2024-005…...……...……....14

NMFS & NPFMC, *Final Environmental Impact Statement for the Bering Sea and Aleutian Islands Halibut Abundance-Based Management of Amendment 80 Prohibited Species Catch Limit. Amendment 123 to the Fishery Management Plan for Groundfish of the Bering Sea and Aleutian Islands Management Area December 2022*, at 250-251, Table 5-16 (2022)……………………………………………………………..15

Report of the International Fisheries Commission, *Life History of the Pacific Halibut*, vol. 9, at 3 (1936)…………….……………………………………….. 10

Resolution 01-2024, A Resolution in Support of Amendment 123 to the Fishery Management Plan (FMP) for Groundfish of the Bering Sea and Aleutian Islands (BSAI) Management Area……………………………………………………..6, 14

*Scientists Report Declines in Pacific Halibut Mortality*, NOAA Fisheries, https://www.fisheries.noaa.gov/ feature-story/scientists-report-declines-pacific-halibut-mortality…………………………………………………..2

Timothy Loher and Andrew Seitz, *Characterization of Active Spawning Season and Depth for Eastern Pacific Halibut (Hippoglossus stenolepis), and Evidence of Probable Skipped Spawning*, J. Northw. Atl. Fish. Sci., 41, 23-36 (2008)….………………..…8

# I.     PREFACE: HALIBUT FISHING IN ALASKA'S WATERS

It's 7:15AM, nearly 1,000 miles from the Pacific halibut's nursery waters,

visibility stretches hundreds of miles and the bay's surface is still as glass. Captain

Avery of the F/V "Whistler," looks out on the clouded horizon towards Mt. Saint

Augustine, his deckhands behind him, ready to collect passengers' fishing

licenses and prep the fishing rods. Avery's four-year-old son, Gray, snoozes in his

life jacket to the sound of the Whistler's roaring engines—in the very same place

Avery used to snooze every summer morning when *his* father captained the

Whistler. And not so much has changed from how it was when Avery's father ran

things: passengers arrive to the office at 6:30AM; the captain greets and walks

them to the boat; he goes over safety procedures, points out the life vests, the life-

raft, and discusses in-case-of-fire procedures; he starts the Whistler's engines,

leaves the harbor, and heads out towards the mouth of the bay, towards

Augustine.

The passengers, mainly non-local tourists, are the same as they've always

been, though sometimes a repeat customer, the passengers come from all over the

country and world, hoping to catch some halibut during their often 'once-in-a-

lifetime' trip to Alaska. These passengers—*tourists*—leave a tip not only with the

Groundfish f. v. Nat'l Marine
Fisheries Serv., et al, and Cent.
Bering Sea Fisherman's Ass'n.

1

Case No. 3:23-cv-00283-JMK

Case 3:23-cv-00283-JMK   Document 42   Filed 06/27/24   Page 14 of 45   Exhibit 1 000005

Whistler's deckhands, but with bartenders after the fishing trip ends, and with local restaurants that cook their freshly caught fish. Local processors package what is left of the tourists' catch, and tourists spend money at the gift shops, and local campgrounds, and gas stations, and museums, and it is now, as it has long been, that summertime fishing tourism drives the economy of Captain Avery's, and many other Alaskan coastal towns.[1]

And here in this town, like other communities of the *Amici*, a drastic change has taken place since the days when Captain Avery's dad ran the Whistler: the halibut are smaller[2] and less abundant.[3] It is not hyperbole to suggest that the tourism industry that supports Captain Avery's way of life may not exist to

---

[1] Barabara Hutniczak, *Assessing cross-regional flows of economic benefits: A case study of Pacific halibut commercial fishing in Alaska*, 255, Fisheries Research (2022) https://doi.org/10.1016/j.fishres.2022.106449

[2] *Fishery, Climate, and Ecological Effects on Pacific Halibut Size-at-age*, Gordon Kruse, University of Alaska Fairbanks, https://www.uaf.edu/cfos/research/projects/fishery-climate-and-eco/#:~:text=Despite%20their%20reputation%20as%20a,than%2045%20pounds%20in%202013. (Last visited June 8, 2024).

[3] *Scientists Report Declines in Pacific Halibut Mortality*, NOAA Fisheries, https://www.fisheries.noaa.gov/feature-story/scientists-report-declines-pacific-halibut-mortality

Case 3:23-cv-00283-JMK   Document 42   Filed 06/27/24   Page 15 of 45   Exhibit 1 000006

support his son's. Amendment 123,[4] challenged by Plaintiff, is purposed to protect the collective futures of the *Amici curiae* as it relates to this vital resource.

## I.    INTERESTS OF AMICI CURIAE[5]

Cordova District Fishermen United, Kodiak Archipelago Rural Regional Leadership Forum, and individuals Avery Ault, and Daniel Donich, Greg Sutter, Richard Baltzer, and Emily Ault (collectively, "*Amici curiae*") respectfully submit this *amicus* brief in the above-captioned proceeding. Collectively, the *Amici curiae* are Alaskan organizations and individuals, whose economies and ways of life depend on the Pacific halibut. After decades of depletion of the Pacific halibut's nursery,[6] *Amici curiae*, to varying degrees, now rely on the implementation and

---

[4] Fisheries of the Exclusive Economic Zone Off Alaska; Bering Sea and Aleutian Islands Halibut Abundance Based Management of Amendment 80 Prohibited Species Catch Limit, 88 Fed., Reg. 82,740, 42 (Nov. 24, 2023) (codified at 50 C.F.R. § 679.21(b)(1)(i)(A)-(C) and 50 C.F.R. § 679.91).

[5] This *Amicus* brief was authored by the undersigned, without any party's counsel in whole, or in part. Neither a party, or a party's counsel contributed money that was intended to fund preparing or submitting the brief; no person—other than the amicus curiae, its members, or its counsel—contributed money that was intended to fund preparing or submitting this Amicus brief.

[6] Int'l Pac. Halibut Comm'n, *Distribution and Abundance of Juvenile Halibut in the Southern Bering Sea*, Scientific Report No. 62, at 4 (1977), (Stating "The southeastern Bearing Sea is a vast nursey area for halibut. The International Pacific Halibut Commission (IPHC) has studied the juveniles inhabiting this area since 1963. . .

Case 3:23-cv-00283-JMK   Document 42   Filed 06/27/24   Page 16 of 45   Exhibit 1 000007

enforcement of sustainable fishing regulations for protection from the continued

destruction of *Amici curiae's* economies and ways of life.

Amendment 123, approved and implemented by Defendant National

Marine Fisheries Services ("NMFS") ensures bycatch reductions which provide

*Amici Curiae* such protection. Plaintiff, a non-profit representing the interests of

five companies and seventeen trawler catcher-processors, seeks to vacate

Amendment 123 and the protections provided by it. As beneficiaries of

Amendment 123, *Amici curiae* submit this *amicus* brief in support of Defendants.

Amicus curiae Cordova District Fishermen United (CDFU) is a membership

organization representing the interests of roughly 900 Alaska

commercial fishermen and their individual fishing businesses. The halibut fishery

is vital to CDFU members and non-members who rely on healthy Pacific halibut

stocks in the state waters of Prince William Sound and the federal northern-central

waters of the Gulf of Alaska for their sustained business operations and personal

livelihoods, either as primary business income or as supplemental income to the

---

*The abundance of juveniles varied inversely with the estimates of incidental catch of halibut by the trawl fishery"* (emphasis added)).

Case 3:23-cv-00283-JMK   Document 42   Filed 06/27/24   Page 17 of 45   Exhibit 1 000008

salmon fishing operations which have become increasingly less profitable in recent years.

Amicus curiae Kodiak Archipelago Rural Regional Leadership Forum (the "Forum") is a consortium of tribal, municipal Alaska Native Corporation and other leaders from the coastal communities of Akhiok, Kodiak, Larsen Bay, Old Harbor, Ouzinkie, and Port Lions. Sustainable fisheries are integral to the continuation of the cultural heritage and economic viability of Forum communities. Pacific halibut bycatch affects Forum communities because juvenile halibut cannot migrate from the Bering Sea to benefit the Forum's Alaska Native cultural traditions. Among other issues, this causes food insecurity among the Forum's communities. Additionally, since Forum members must finance the purchase of their individual fishing quotas (IFQs), Forum members become unable to fish and pay back their IFQ loans when the total allowable catch limits for Pacific halibut are used up and wasted as bycatch. Amendment 123 protects the Forum by creating an "abundance-based" management system which connects bycatch limits to Pacific halibut abundance and ensures the Forum's ability to not only

work and pay back their loans, but to feed themselves through subsistence fishing.[7]

Amicus curiae Prince William Sound Economic Development District (PWSEDD) is a federally recognized economic development district serving Chenega, Cordova, Tatitlek, Valdez, and Whittier, Alaska. PWSEDD has been representing Prince William Sound ("the Sound") communities since 1991 and works to advance implementation of community and regional economic development priorities for the Sound's marine economy and its infrastructure, expand renewable energy capacity and reduce energy costs, expand housing options, workforce development opportunities, and supports the region's business community. PWSEDD facilitates local and regional partnerships, assists with grant writing and pursues grants, and manages specific projects such as growing the region's mariculture capacity in partnership with PWS kelp farmers. PWSEDD supports those who work with and rely on, and PWSEDD relies on, a healthy Pacific halibut stock.

---

[7] *See* Exhibit 7, Kodiak Archipelago Rural Regional Leadership Forum Resolution 01-2024, A Resolution in Support of Amendment 123 to the Fishery Management Plan (FMP) for Groundfish of the Bering Sea and Aleutian Islands (BSAI) Management Area.

Amicus curiae Daniel Donich is an individual and charter fisherman living in Homer, Alaska. Daniel Donich is captain of the F/V "THE OPTIMIST" and has lived in Homer, Alaska since 1988. Daniel Donich relies on a heathy Pacific halibut stock for his livelihood and well-being.

Amicus curiae Avery Ault is an individual and charter fisherman living in Homer, Alaska. Avery Ault is captain of the F/V "Whistler" and has lived in Homer, Alaska his entire life. Avery Ault has worked on halibut charters his entire career, and he relies on a heathy Pacific halibut stock for his livelihood and well-being.

Amicus curiae Greg Sutter is an individual and charter fisherman living in Homer, Alaska. Greg Sutter is captain of the F/V "Tomahawk II" and has lived in Homer, Alaska since 1995. Greg Sutter has been a charter captain since 1978 and relies on a heathy Pacific halibut stock for his livelihood and well-being.

Amicus curiae Richard Baltzer is an individual and charter fisherman living in Homer, Alaska. Richard Baltzer has been an active participant in the commercial and sport fisheries of South Central and Western Alaska for 50 years. He believes there are many factors in the population fluctuations of Alaska's fish,

but that factory trawlers play an ever-increasing role in this fluctuation and that Amendment 123 assists in stopping these dangerous fluctuations.

Amicus curiae Emily Ault is an individual and owner of the tourism booking company, Inlet Charters. Emily has been an active participant in the sport fisheries of South Central Alaska for decades. She has lived in Homer, Alaska for her entire life. Emily Ault relies on a heathy Pacific halibut stock for her livelihood and well-being.

Through this *amicus* brief and the attached resolutions, the *amici* wish to share their experiences, highlight the importance of the Pacific halibut on their economy and ways of life, and encourage this Court to consider the coastwide benefits that Amendment 123's halibut bycatch limit provides for Alaskan communities and individuals.

## II.    BACKGROUND

The Pacific halibut is a large flatfish which represents one of the northeastern Pacific Ocean's most valuable fishery resources.[8] "Identifying

---

[8] Timothy Loher and Andrew Seitz, *Characterization of Active Spawning Season and Depth for Eastern Pacific Halibut (Hippoglossus stenolepis), and Evidence of Probable Skipped Spawning*, J. Northw. Atl. Fish. Sci., 41, 23-36 (2008) (discussing spawning patterns of tagged Pacific halibut).

Groundfish f. v. Nat'l Marine                           Case No. 3:23-cv-00283-JMK
Fisheries Serv., et al.                    8
Case 3:23-cv-00283-JMK   Document 42   Filed 06/27/24   Page 21 of 45   Exhibit 1 000012

spawning behavior in Pacific halibut . . . is particularly challenging because they occupy a deep, remote environment during the spawning season."[9] However, recent meta-analysis suggests Pacific halibut spawn in the Gulf of Alaska, and "[f]rom spawning grounds in the Gulf of Alaska, eggs and larvae are transported westward, some crossing Aleutian Island[s] pass[] into the Bering Sea."[10] Once there, "[m]ost young halibut spend from five to seven years in rich, shallow nursey grounds like the Bering Sea."[11] *This* is the Pacific halibut's nursery.

Even before scientific data could prove that halibut nursed in the Bering Sea, governmental bodies understood that the species needed management and protecting. Therefore, the International Pacific Halibut Commission (IPHC) was formed under a treaty between Canada and the United States. For a century now, the IPHC understood that "[i]f there were unrestricted fishing, nearly the entire annual addition might be removed in one year and there might never be much

---

[9] Andrew Sietz, Branda Norcross, Derek Wilson, and Jennifer Nielsen, *Identifying Spawning Behavior in Pacific Halibut, Hippoglossus stenolepis, using electronic tags*, Environmental Biology of Fishes, 73, 445-451 (2005).

[10] *See* Carpi, et al., *Ontogenetic and spawning migration of Pacific halibut: a review*, Reviews in Fish Biology and Fisheries, 31, 879-908 (2021).

[11] Alaska Department of Fish & Game, *Pacific Halibut: Wildlife Notebook Series*, (2007).

more on the grounds at any one time than the young which had been added in that year...”[12] Thus, “if the take of fish should be more than the annual addition, the stock would quickly decrease again, just as a reservoir of water would empty if more were taken out than came in.”[13]

The inflow of the Pacific halibut's reservoir is its nursery—the Bering Sea, where juveniles reach sexual maturity and become able to replenish the stock. The Bering Sea is also the place where companies and boats represented by Plaintiff cast *very* wide nets, attempting to secure their target fish, but incidentally and yet systematically they remove millions of pounds of juvenile Pacific halibut annually[14]—before they can reproduce. This incidental catching by the trawling industry is termed “bycatch.” It is now well understood that the “[m]ortality of discarded Pacific halibut bycatch . . . in the Bering Sea leads to significant losses

---

[12] Report of the International Fisheries Commission, *Life History of the Pacific Halibut,* vol. 9, at 3 (1936).

[13] *Id.*

[14] Alaska Wildlife Alliance, *November 18. 2021 Help Reduce Halibut Bycatch,* https://www.akwildlife.org/news/2021/11/17/reducing-halibutbycatch#:~:text=Ab out%203.3%20million%20pounds%20of,other%20no n%2Dfish%20species) (last visited June 8, 2024).

Groundfish f. v. Nat'l Marine                                    Case No. 3:23-cv-00283-JMK
Fisheries Serv., et al.                        10
Case 3:23-cv-00283-JMK   Document 42   Filed 06/27/24   Page 23 of 45   Exhibit 1 000014

in the halibut setline . . . fisheries."[15] Amendment 123 deals with this bycatch problem directly.

## III.    THE REGULATION AND IMPACT

As explained in the preamble promulgated with Amendment 123, the Amendment

> establishes a process to set the annual halibut PSC limit [i.e., the bycatch limit] for the Amendment 80 sector . . . The halibut PSC limit for the Amendment 80 sector is determined annually . . . The halibut PSC limits range from 1,745 mt when abundance is characterized as ''high'' for the IPHC index, down to 1,134 mt (35 percent reduction) when abundance is characterized as ''very low.''[16,]

Recent declines in Pacific halibut stock and associated reductions in halibut harvest limits have greatly impacted the bottom lines of halibut fishermen and harmed the communities they support. Because of observable stock declines, it takes twice as much time and twice the operational costs for vessel and crew to harvest the same number of halibut as just a few years ago. One of the

---

[15] Alderstein, Trumble, *Pacific Halibut bycatch in Pacific cod fisheries in the Bering Sea: an analysis to evaluate area-time management*, Journal of Sea Research 39, 153-166 (1998).

[16] Fisheries of the Exclusive Economic Zone Off Alaska; Bering Sea and Aleutian Islands Halibut Abundance Based Management of Amendment 80 Prohibited Species Catch Limit, 88 Fed., Reg. 82,740, 42 (Nov. 24, 2023) (codified at 50 C.F.R. § 679.21(b)(1)(i)(A)-(C) and 50 C.F.R. § 679.91).

Case 3:23-cv-00283-JMK   Document 42   Filed 06/27/24   Page 24 of 45   Exhibit 1 000015

northeastern Pacific Ocean's most valuable fishery resources is being actively depleted due to bycatch and the resulting economic impact is drastic: Pacific halibut fisheries across the state of Alaska will only continue to lose revenue should this Court vacate Amendment 123.

The IPHC's Pacific Halibut Multiregional Economic Impact Assessment project report finds "that the revenue generated by Pacific halibut at the harvest stage accounts for only a fraction of economic activity that would be forgone if the resource was not available to fishers in the Pacific Northwest."[17] According to the IPHC, each dollar of commercial halibut landings contribute over four dollars of economic activity.[18] In the recreational sector alone, every dollar spent by recreational anglers was linked to 2.3 dollars circulating in the economy.[19]

> On average, in 2019, one USD/CAD of Pacific halibut commercial landings was linked to over four USD/CAD-worth economic activity in Canada and the United States and contributed USD/CAD 1.3 to households. In the recreational sector, one USD/CAD spent by recreational anglers was linked to USD/CAD 2.3 circulating in the economy and USD/CAD 0.7 impact on households. The total

---

[17] Hutniczak, B., *Pacific Halibut Multiregional Economic Impact Assessment (PHMEIA): project report*, IPHC-2022-SRB020-09 (2022). https://www.iphc.int/uploads/pdf/srb/srb020/iphc-2022-srb020-09.pdf

[18] *Id.*

[19] *Id.*

Case 3:23-cv-00283-JMK   Document 42   Filed 06/27/24   Page 25 of 45   Exhibit 1 000016

economic activity linked to Pacific halibut sectors is estimated at USD 1,014 mil. (CAD 1,346 mil), and contribution to households at USD 326 mil. (CAD 432 mil.), highlighting how important Pacific halibut is to regional economies.[20]

This "flow of earnings" is "particularly pronounced in Alaska where substantial flows are identified from harvest location to buyer's headquarters, from the landing area to vessel owner residence and quota residence, and from sport fishing location to Charter Halibut Permit owner residence."[21] Thus, it is not only harvesters, but also restaurants, processors, sport fisherman, and many others who benefit from a healthy Pacific halibut stock. And although the economic benefits are shared by a wide array of groups, geographically speaking, the benefits are concentrated: "of direct earnings from Pacific halibut commercial sectors in Alaska, 70% was retained in Alaska."[22] As the figure below show, this drives economies all along the coast of Alaska:

---

[20] *Id.*

[21] *Id.* at 4.

[22] *Id.*

Case 3:23-cv-00283-JMK   Document 42   Filed 06/27/24   Page 26 of 45   Exhibit 1 000017



23

Avoiding waste of halibut as bycatch is therefore critically important to coastal communities across the state. As the attached resolutions passed by coastal communities and municipalities ranging from Adak to Petersburg show, coastal communities depend on Amendment 123.[24]

---

[23] *Id.*

[24] *See attached* Exhibits 2-7, Petersburg Borough, Alaska Resolution 2024-08; City of Homer, Alaska Resolution 24-073; City and Borough of Sitka Resolution No. 2024-13; City of Cordova, Alaska Resolution 06-24-26; City of Seldovia Resolution 24-39; Kodiak Archipelago Rural Regional Leadership Forum Resolution 01-2024, A Resolution in Support of Amendment 123 to the Fishery Management Plan (FMP)

These resolutions explain that "if successful, the plaintiff's motion would impair . . . economic interests through reduced venues, depressed quota values, increased economic uncertainty, and reduced tax revenues from businesses either participating in or providing services to the halibut fishery, as the history under the prior bycatch limits confirms."[25]

From 2010 to 2020, the Amendment 80 trawling sector was responsible for over 27 million pounds of halibut mortality.[26] According to the IPHC's research, each pound of halibut removal results in between $7.40 and $20.90 dollars in household economic impacts.[27]

Alaskan coastal communities and those of the *Amici* make honest livings off the land and the sea. The *Amici* have prospered in that they can pass on

---

for Groundfish of the Bering Sea and Aleutian Islands (BSAI) Management Area; City of Adak, Resolution 2024-005.

[25] *Id.*

[26] NMFS & NPFMC, *Final Environmental Impact Statement for the Bering Sea and Aleutian Islands Halibut Abundance-Based Management of Amendment 80 Prohibited Species Catch Limit. Amendment 123 to the Fishery Management Plan for Groundfish of the Bering Sea and Aleutian Islands Management Area December 2022*, at 250-251, Table 5-16 (2022).

[27] Hutniczak, B., *Pacific Halibut Market Profile*. IPHC-2021-ECON-06R01 https://www.iphc.int/uploads/pdf/economics/2021/iphc-2021-econ-06.pdf (2022).

livelihoods of hard work and sustained yield from this generation to the next, just as one was passed to them. But the yield is only sustained if limitations on the annual harvest are there to protect the harvest for years to come. Amendment 123 provides those limitations.

## IV. CONCLUSION

This lawsuit is about coastal Alaskan communities and the livelihoods of the individuals living here. It is about whether Alaskans can continue to access the halibut they depend upon by establishing responsible limitations on the largest source of halibut bycatch in the Bering Sea. Amendment 123 is not a tool for reallocation as Plaintiff suggests, but instead one for preservation.

The *Amici* pray this Court find for Defendant and uphold Amendment 123 to protect the Pacific halibut stock and their livelihoods.

DATED: June 27, 2024                                  INLET LAW, LLC
                                                     Attorney for Amici Curiae

                                                     /s/ Ken Ciccoli
                                                     Ken Ciccoli
                                                     Alaska Bar No. 2211118

Exhibit 1 000020

## CERTIFICATE OF COMPLIANCE WITH LENGTH LIMIT AND TYPEFACE AND TYPE-STYLE REQUIREMENTS

In accordance with Local Civil Rule 7(a), this *Amicus* Brief, excluding the sections identified in Local Civil Rule 7.4(a)(4), contains 2,961 words.

This Amicus Brief complies with the typeface and type-style requirements of Local Civil Rule 7.5 as because it is typed in 13-point Palatino Linotype font.


DATED: June 27, 2024

INLET LAW, LLC
Attorney for Amici Curiae


/S/ Ken Ciccoli
Ken Ciccoli
Alaska Bar No. 2211118


## CERTIFICATE OF SERVICE

I served a true and correct copy of the foregoing on all parties. This document was served electronically through the Court's CM/ECF System.


DATED: June 27, 2024

INLET LAW, LLC
Attorney for Amici Curiae


/s/ Ken Ciccoli
Ken Ciccoli
Alaska Bar No. 2211118

**CITY AND BOROUGH OF SITKA**

**RESOLUTION NO. 2024-13**

**A RESOLUTION OF THE CITY AND BOROUGH OF SITKA SUPPORTING AMENDMENT 123 TO THE FISHERY MANAGEMENT PLAN (FMP) FOR GROUNDFISH OF THE BERING SEA AND ALEUTIAN ISLANDS (BSAI) MANAGEMENT AREA WHICH AMENDS REGULATIONS GOVERNING LIMITS ON THE PACIFIC HALIBUT PROHIBITED SPECIES CATCH (PSC) AND LINKS THE HALIBUT PSC LIMIT FOR THE AMENDMENT 80 COMMERCIAL GROUNDFISH TRAWL FLEET IN THE BSAI GROUNDFISH FISHERIES TO HALIBUT ABUNDANCE**

**WHEREAS,** on December 2021, the North Pacific Fishery Management Council (NPFMC) recommended, and the National Marine Fisheries Service (NMFS) proposed, Amendment 123 (A-123) which links the halibut PSC limit for the Amendment 80 (A-80) commercial groundfish trawl fleet in the BSAI groundfish fisheries to halibut abundance thereby intending to minimize halibut PSC to the extent practicable while achieving optimum yield in the BSAI groundfish fisheries on a continuing basis; and

**WHEREAS,** based on a review of the scientific information and consideration of the revised National Standard guidelines, the NPFMC and NMFS determined that reducing halibut PSC with declining halibut abundance provides conservation benefits, as defined by the Magnuson-Stevens Act, to the halibut resource; and

**WHEREAS,** linking PSC limits to halibut abundance is more equitable that the prior static PSC limit because when BSAI halibut abundance declines, a static level of halibut PSC in the Amendment 80 fisheries can represent a greater proportion of total halibut removals in the BSAI, particularly in Area 4CDE, and can reduce the proportion of halibut available for harvest in directed halibut fisheries; and

**WHEREAS,** A-123 provides incentives for the A-80 fleet to minimize halibut mortality at all times, and may provide indirect benefits to communities that rely on directed fishing for halibut; and

**WHEREAS,** the halibut fishery is vital to Sitka's economy, its local fishermen and working families and crews, its social fabric and well-being, and local subsistence users and beneficiaries; and

**WHEREAS,** in order to maximize the benefits of the halibut fishery to Sitka, the City has invested in infrastructure that supports the community's local halibut fishermen and families, including most recently investing $8.3 million in a vessel haul out and boatyard; and

**WHEREAS,** the A-123 Final Rule was published on November 23, 2023, subsequent to which on December 19, 2023, the Groundfish Forum (GFF) in representation of the A-80 groundfish trawl sector filed a lawsuit in the United States District Court for the District of Alaska requesting that the Court vacate NMFS' decision approving A-123 and remanding it to NMFS to address serious errors; and

**WHEREAS,** on February 6, 2024, in recognition of the importance of supporting the NPFMC's action and NMFS' implementation of A-123, a group of halibut dependent stakeholders known as the Halibut Defense Alliance (HDA) moved to intervene in the lawsuit as defendants on the side of NMFS; and

**WHEREAS,** on April 26, 2024, the plaintiff, GFF, filed a Motion for Summary Judgment stating that A-123 is "arbitrary, capricious, and contrary to the law" and requested that it be vacated; and

**WHEREAS,** if successful, the plaintiff's motion would impair Sitka's immediate economic interests through reduced revenues, depressed quota values, increased economic uncertainty, and reduced tax revenues from businesses either participating in or providing services to the halibut fishery, as the history under the prior bycatch limits confirms; and

**WHEREAS,** such outcome would also impair Sitka's economic interests in the longer term, because juvenile halibut taken as bycatch in the BSAI cannot migrate to other areas to support either the halibut spawning stock or active fisheries there.

**NOW, THEREFORE, BE IT RESOLVED** that the Assembly of the City and Borough of Sitka supports Amendment 123 linking the halibut PSC limit for the Amendment 80 fleet in the BSAI groundfish fisheries to halibut abundance.

**PASSED, APPROVED, AND ADOPTED** by the Assembly of the City and Borough of Sitka, Alaska on this 28th day of May, 2024.

Kevin Mosher, Deputy Mayor

ATTEST:

Sara Peterson, MMC
Municipal Clerk

1st and final reading: 5/28/2024

Sponsors: Ystad / Mosher

# PETERSBURG BOROUGH, ALASKA
## RESOLUTION 2024-08

## A RESOLUTION OF THE PETERSBURG BOROUGH ASSEMBLY IN SUPPORT OF AMENDMENT 123 TO THE FISHERY MANAGEMENT PLAN (FMP) FOR GROUNDFISH OF THE BERING SEA AND ALEUTIAN ISLANDS (BSAI) MANAGEMENT AREA WHICH AMENDS REGULATIONS GOVERNING LIMITS ON THE PACIFIC HALIBUT PROHIBITED SPECIES CATCH (PSC) AND LINKS THE HALIBUT PSC LIMIT FOR THE AMENDMENT 80 COMMERCIAL GROUNDFISH TRAWL FLEET IN THE BSAI GROUNDFISH FISHERIES TO HALIBUT ABUNDANCE

**WHEREAS,** in December 2021, the North Pacific Fishery Management Council (NPFMC) recommended, and the National Marine Fisheries Service (NMFS) proposed, Amendment 123 (A-123) which links the halibut PSC limit for the Amendment 80 (A-80) commercial groundfish trawl fleet in the BSAI groundfish fisheries to halibut abundance thereby intending to minimize halibut PSC to the extent practicable while achieving optimum yield in the BSAI groundfish fisheries on a continuing basis; and

**WHEREAS,** based on a review of the scientific information and consideration of the revised National Standard guidelines, the NPFMC and NMFS determined that reducing halibut PSC with declining halibut abundance provides conservation benefits, as defined by the Magnuson-Stevens Act, to the halibut resource; and

**WHEREAS,** linking PSC limits to halibut abundance is more equitable that the prior static PSC limit because when BSAI halibut abundance declines, a static level of halibut PSC in the Amendment 80 fisheries can represent a greater proportion of total halibut removals in the BSAI, particularly in Area 4CDE, and can reduce the proportion of halibut available for harvest in directed halibut fisheries; and

**WHEREAS,** A-123 provides incentives for the A-80 fleet to minimize halibut mortality at all times, and may provide indirect benefits to communities that rely on directed fishing for halibut; and

**WHEREAS,** the halibut fishery is vital to Petersburg's local economy, its local fishermen and working families and crews, its social fabric and well-being, and local subsistence users and beneficiaries; and

**WHEREAS,** in order to maximize the benefits of the halibut fishery to Petersburg, the Borough has invested in infrastructure that supports the community's local halibut fishermen and families; and

**WHEREAS,** the A-123 Final Rule was published on November 23, 2023, subsequent to which on December 19, 2023, the Groundfish Forum (GFF) in representation of the A-80 groundfish trawl sector filed a lawsuit in the United States District Court for the District of Alaska requesting that the Court vacate NMFS' decision approving A-123 and remanding it to NMFS to address serious errors; and

**WHEREAS,** on February 6, 2024, in recognition of the importance of supporting the NPFMC's action and NMFS' implementation of A-123, a group of halibut dependent stakeholders known as the Halibut Defense Alliance (HDA) moved to intervene in the lawsuit as defendants on the side of NMFS; and

**WHEREAS**, on April 26, 2024, the plaintiff, GFF, filed a Motion for Summary Judgment stating that A-123 is "arbitrary, capricious, and contrary to the law" and requested that it be vacated; and

**WHEREAS,** if successful, the plaintiff's motion would impair Petersburg's immediate economic interests through reduced revenues, depressed quota values, increased economic uncertainty, and reduced tax revenues from businesses either participating in or providing services to the halibut fishery, as the history under the prior bycatch limits confirms; and

**WHEREAS,** such outcome would also impair Petersburg's economic interests in the longer term, because juvenile halibut taken as bycatch in the BSAI cannot migrate to other areas to support either the halibut spawning stock or active fisheries there.

**NOW THEREFORE BE IT RESOLVED THAT** the Petersburg Borough Assembly approves Resolution 2024-08 in support of Amendment 123 linking the halibut PSC limit for the Amendment 80 fleet in the BSAI groundfish fisheries to halibut abundance.

**PASSED AND APPROVED** by the Petersburg Borough Assembly, Petersburg, Alaska this 20th day of May, 2024.

_____
**Mark Jensen, Mayor**

**ATTEST:**

_____
**Debra K. Thompson, Borough Clerk**

Exhibit 3 000002

**CITY OF HOMER**
**HOMER, ALASKA**

**RESOLUTION 24-073**

A RESOLUTION OF THE CITY COUNCIL HOMER, ALASKA, IN
SUPPORT OF AMENDMENT 123 TO THE FISHERY MANAGEMENT
PLAN (FMP) FOR GROUNDFISH OF THE BERING SEA AND ALEUTIAN
ISLANDS (BSAI) MANAGEMENT AREA WHICH AMENDS
REGULATIONS GOVERNING LIMITS ON THE PACIFIC HALIBUT
PROHIBITED SPECIES CATCH (PSC) AND LINKS THE HALIBUT PSC
LIMIT FOR THE AMENDMENT 80 COMMERCIAL GROUNDFISH
TRAWL FLEET IN THE BSAI GROUNDFISH FISHERIES TO HALIBUT
ABUNDANCE

WHEREAS, On December 2021, the North Pacific Fishery Management Council (NPFMC)
recommended, and the National Marine Fisheries Service (NMFS) proposed, Amendment 123
(A-123) which links the halibut PSC limit for the Amendment 80 (A-80) commercial groundfish
trawl fleet in the BSAI groundfish fisheries to halibut abundance thereby intending to minimize
halibut PSC to the extent practicable while achieving optimum yield in the BSAI groundfish
fisheries on a continuing basis; and

WHEREAS, Based on a review of the scientific information and consideration of the
revised National Standard guidelines, the NPFMC and NMFS determined that reducing halibut
PSC with declining halibut abundance provides conservation benefits, as defined by the
Magnuson-Stevens Act, to the halibut resource; and

WHEREAS, Linking PSC limits to halibut abundance is more equitable that the prior
static PSC limit because when BSAI halibut abundance declines, a static level of halibut PSC in
the Amendment 80 fisheries can represent a greater proportion of total halibut removals in the
BSAI, particularly in Area 4CDE, and can reduce the proportion of halibut available for harvest
in directed halibut fisheries; and

WHEREAS, A-123 provides incentives for the A-80 fleet to minimize halibut mortality at
all times, and may provide indirect benefits to communities that rely on directed fishing for
halibut; and

WHEREAS, The halibut fishery is vital to the City of Homer's local economy, its local
fishermen and working families and crews, its social fabric and well-being, and local
subsistence users and beneficiaries; and

42      WHEREAS, In order to maximize the benefits of the halibut fishery to the City of Homer,
43  the City has invested in infrastructure that supports the community's local halibut fisheries;
44  and
45
46      WHEREAS, The A-123 Final Rule was published on November 23, 2023, subsequent to
47  which on December 19, 2023, the Groundfish Forum (GFF) in representation of the A-80
48  groundfish trawl sector filed a lawsuit in the United States District Court for the District of
49  Alaska requesting that the Court vacate NMFS' decision approving A-123 and remanding it to
50  NMFS to address serious errors; and
51
52      WHEREAS, On February 6, 2024, in recognition of the importance of supporting the
53  NPFMC's action and NMFS' implementation of A-123, a group of halibut dependent
54  stakeholders known as the Halibut Defense Alliance (HDA) moved to intervene in the lawsuit
55  as defendants on the side of NMFS; and
56
57      WHEREAS, On April 26, 2024, the plaintiff, GFF, filed a Motion for Summary Judgment
58  stating that A-123 is "arbitrary, capricious, and contrary to the law" and requested that it be
59  vacated; and
60
61      WHEREAS, If successful, the plaintiff's motion would impair the City of Homer's
62  economic interests in the longer term, because juvenile halibut taken as bycatch in the BSAI
63  cannot migrate to other areas such as the Gulf of Alaska to support either the halibut spawning
64  stock or active fisheries there; and
65
66      WHEREAS, If successful, the plaintiff's motion would reverse needed conservation
67  benefits and impede the City of Homer's economic interests through reduced revenues,
68  depressed quota values, increased economic uncertainty, and reduced tax revenues from
69  businesses either participating in or providing services to halibut fisheries, as the history under
70  the prior bycatch limits confirms; and
71
72      WHEREAS, The City of Homer claims the title of "Halibut Capital of the World".
73
74      NOW, THEREFORE, BE IT RESOLVED THAT the City Council of Homer, Alaska approves
75  Resolution 24-073 in support of Amendment 123 linking the halibut PSC limit for the
76  Amendment 80 fleet in the BSAI groundfish fisheries to halibut abundance.
77
78      PASSED AND ADOPTED by the Homer City Council on this 17th day of June, 2024.
79

80
81
82
83
84
85
86
87
88  ATTEST:
89
90
91
92
93  Fiscal Note: N/A
94

CITY OF HOMER

KEN CASTNER, MAYOR

RENEE KRAUSE, MMC, ACTING CITY CLERK

Exhibit 4 000003

# CITY OF CORDOVA, ALASKA
## RESOLUTION 06-24-26

**A RESOLUTION OF THE COUNCIL OF THE CITY OF CORDOVA, ALASKA, IN SUPPORT OF AMENDMENT 123 TO THE FISHERY MANAGEMENT PLAN (FMP) FOR GROUNDFISH OF THE BERING SEA AND ALEUTIAN ISLANDS (BSAI) MANAGEMENT AREA WHICH AMENDS REGULATIONS GOVERNING LIMITS ON THE PACIFIC HALIBUT PROHIBITED SPECIES CATCH (PSC) AND LINKS THE HALIBUT PSC LIMIT FOR THE AMENDMENT 80 COMMERCIAL GROUNDFISH TRAWL FLEET IN THE BSAI GROUNDFISH FISHERIES TO HALIBUT ABUNDANCE**

**WHEREAS**, on December 2021, the North Pacific Fishery Management Council (NPFMC) recommended, and the National Marine Fisheries Service (NMFS) proposed, Amendment 123 (A-123) which links the halibut PSC limit for the Amendment 80 (A-80) commercial groundfish trawl fleet in the BSAI groundfish fisheries to halibut abundance thereby intending to minimize halibut PSC to the extent practicable while achieving optimum yield in the BSAI groundfish fisheries on a continuing basis; and

**WHEREAS**, based on a review of the scientific information and consideration of the revised National Standard guidelines, the NPFMC and NMFS determined that reducing halibut PSC with declining halibut abundance provides conservation benefits, as defined by the Magnuson-Stevens Act, to the halibut resource; and

**WHEREAS**, linking PSC limits to halibut abundance is more equitable that the prior static PSC limit because when BSAI halibut abundance declines, a static level of halibut PSC in the Amendment 80 fisheries can represent a greater proportion of total halibut removals in the BSAI, particularly in Area 4CDE, and can reduce the proportion of halibut available for harvest in directed halibut fisheries; and

**WHEREAS**, A-123 provides incentives for the A-80 fleet to minimize halibut mortality at all times, and may provide indirect benefits to communities that rely on directed fishing for halibut; and

**WHEREAS**, the halibut fishery is vital to Cordova's local economy, its local fishermen and working families and crews, its social fabric and well-being, and local subsistence users and beneficiaries; and

**WHEREAS**, in order to maximize the benefits of the halibut fishery to Cordova, the City has invested in infrastructure that supports the community's local halibut fishermen and families; and

**WHEREAS**, the A-123 Final Rule was published on November 23, 2023, subsequent to which on December 19, 2023, the Groundfish Forum (GFF) in representation of the A-80 groundfish trawl sector filed a lawsuit in the United States District Court for the District of Alaska requesting that the Court vacate NMFS' decision approving A-123 and remanding it to NMFS to address serious errors; and

**WHEREAS**, on February 6, 2024, in recognition of the importance of supporting the NPFMC's action and NMFS' implementation of A-123, a group of halibut dependent stakeholders known as the Halibut Defense Alliance (HDA) moved to intervene in the lawsuit as defendants on the side of NMFS; and

**WHEREAS**, on April 26, 2024, the plaintiff, GFF, filed a Motion for Summary Judgment stating that A-123 is "arbitrary, capricious, and contrary to the law" and requested that it be vacated; and

**WHEREAS**, if successful, the plaintiff's motion would impair Cordova's immediate economic interests through reduced revenues, depressed quota values, increased economic uncertainty, and reduced tax revenues from businesses either participating in or providing services to the halibut fishery, as the history under the prior bycatch limits confirms; and

**WHEREAS**, such outcome would also impair Cordova's economic interests in the longer term, because juvenile halibut taken as bycatch in the BSAI cannot migrate to other areas to support either the halibut spawning stock or active fisheries there.

**NOW THEREFORE BE IT RESOLVED THAT** the City Council of Cordova approves Resolution 06-24-26 in support of Amendment 123 linking the halibut PSC limit for the Amendment 80 fleet in the BSAI groundfish fisheries to halibut abundance.

**PASSED AND APPROVED THIS 5th DAY OF JUNE 2024**

_____
David Allison, Mayor

ATTEST:

_____
Susan Bourgeois, CMC, City Clerk

Introduced by: Langvardt
Date: 06/24/2024
Action: Approved
Vote: 5 Yes, 1 Absent

**CITY OF SELDOVIA**
**RESOLUTION 24-39**

**A RESOLUTION OF THE CITY COUNCIL OF THE CITY OF SELDOVIA, SUPPORTING AMENDMENT 123 TO THE FISHERY MANAGEMENT PLAN (FMP) FOR GROUNDFISH OF THE BERING SEA AND ALEUTIAN ISLANDS (BSAI) MANAGEMENT AREA WHICH AMENDS REGULATIONS GOVERNING LIMITS ON THE PACIFIC HALIBUT PROHIBITED SPECIES CATCH (PSC) AND LINKS THE HALIBUT PSC LIMIT FOR THE AMENDMENT 80 COMMERCIAL GROUNDFISH TRAWL FLEET IN THE BSAI GROUNDFISH FISHERIES TO HALIBUT ABUNDANCE**

**WHEREAS,** on December 2021, the North Pacific Fishery Management Council (NPFMC) recommended, and the National Marine Fisheries Service (NMFS) proposed, Amendment 123 (A-123) which links the halibut PSC limit for the Amendment 80 (A-80) commercial groundfish trawl fleet in the BSAI groundfish fisheries to halibut abundance thereby intending to minimize halibut PSC to the extent practicable while achieving optimum yield in the BSAI groundfish fisheries on a continuing basis; and

**WHEREAS,** based on a review of the scientific information and consideration of the revised National Standard guidelines, the NPFMC and NMFS determined that reducing halibut PSC with declining halibut abundance provides conservation benefits, as defined by the Magnuson-Stevens Act, to the halibut resource; and

**WHEREAS,** linking PSC limits to halibut abundance is more equitable that the prior static PSC limit because when BSAI halibut abundance declines, a static level of halibut PSC in the Amendment 80 fisheries can represent a greater proportion of total halibut removals in the BSAI, particularly in Area 4CDE, and can reduce the proportion of halibut available for harvest in directed halibut fisheries; and

**WHEREAS,** A-123 provides incentives for the A-80 fleet to minimize halibut mortality at all times, and may provide indirect benefits to communities that rely on directed fishing for halibut; and

**WHEREAS,** the halibut fishery is vital to the City of Seldovia's local economy, its local fishermen and working families and crews, its social fabric and well-being, and local subsistence users and beneficiaries; and

**WHEREAS,** the A-123 Final Rule was published on November 23, 2023, subsequent to which on December 19, 2023, the Groundfish Forum (GFF) in representation of the A-80 groundfish trawl sector filed a lawsuit in the United States District Court for the District of Alaska requesting that the Court vacate NMFS' decision approving A-123 and remanding it to NMFS to address serious errors; and

**WHEREAS,** on February 6, 2024, in recognition of the importance of supporting the NPFMC's action and NMFS' implementation of A-123, a group of halibut dependent stakeholders known as the Halibut Defense Alliance (HDA) moved to intervene in the lawsuit as defendants on the side of NMFS; and

---

Case 3:23-cv-00283-JMK   Document 42   Filed 06/27/24   Page 40 of 45   Exhibit 6 000001

**WHEREAS,** on April 26, 2024, the plaintiff, GFF, filed a Motion for Summary Judgment stating that A-123 is "arbitrary, capricious, and contrary to the law" and requested that it be vacated; and

**WHEREAS,** if successful, the plaintiff's motion would impair the City of Seldovia's economic and social interests in the longer term, because juvenile halibut taken as bycatch in the BSAI cannot migrate to other areas such as the Gulf of Alaska to support either the halibut spawning stock or active fisheries there.

**NOW, THEREFORE, BE IT RESOLVED** that the City Council of the City of Seldovia approves Resolution 24-39 in support of Amendment 123 linking the halibut PSC limit for the Amendment 80 fleet in the BSAI groundfish fisheries to halibut abundance.

**PASSED AND APPROVED** by a duly constituted quorum of the City Council of Seldovia, Alaska, on this 24th day of June , 2024.

ATTEST:                                                      APPROVED:

_Glen Giant_                                            _Jeremiah Campbell_
Liz Diament, City Clerk                          Jeremiah Campbell (Jun 24, 2024 20:29 AKDT)

Jeremiah Campbell, Mayor



**KODIAK ARCHIPELAGO LEADERSHIP INSTITUTE**
Post Office Box 8103* Kodiak, Alaska 99615
*kodiakleadershipinstitute.org*

### RESOLUTION 01-2024

## A RESOLUTION IN SUPPORT OF AMENDMENT 123 TO THE FISHERY MANAGEMENT PLAN (FMP) FOR GROUNDFISH OF THE BERING SEA AND ALEUTIAN ISLANDS (BSAI) MANAGEMENT AREA.

**WHEREAS,** the Kodiak Archipelago Rural Regional Leadership Forum (the Forum) is a consortium of community, tribal, municipal, and ANCSA Corporation leaders from the coastal communities of Akhiok, Larsen Bay, Old Harbor, Ouzinkie, Port Lions and Kodiak; and

**WHEREAS,** WHEREAS, the commercial halibut fishery provides an important component of community-based fleets in rural communities to maintain diversified fishing opportunity; and

**WHEREAS,** the rural communities around Kodiak Island are eligible to form Community Quota Entities with the ability to purchase individual fishing quota for rural community use and have made significant investments in the halibut fishery; and

**WHEREAS,** the halibut fishery is vital to these rural communities, the local economy, its local fishermen and working families and crews, its social fabric and well-being, and local subsistence users and beneficiaries; and

**WHEREAS**, the subsistence halibut fishery is an important and traditional food source which provides a healthy protein source, improves food security, supports community well-being and supports the cultural values; and

**WHEREAS**, waste of valuable marine resources such as halibut is counter to traditional values and beliefs through Kodiak Island's rural communities; and

**WHEREAS**, on December 2021, the North Pacific Fishery Management Council (NPFMC) recommended, and the National Marine Fisheries Service (NMFS) proposed, Amendment 123 (A-123) which links the halibut PSC limit for the Amendment 80 (A-80) commercial groundfish trawl fleet in the BSAI groundfish fisheries to halibut abundance thereby intending to minimize halibut PSC to the extent practicable while achieving optimum yield in the BSAI groundfish fisheries on a continuing basis; and

**WHEREAS**, based on a review of the scientific information and consideration of the revised National Standard guidelines, the NPFMC and NMFS determined that reducing halibut PSC with declining halibut abundance provides conservation benefits, as defined by the Magnuson-Stevens Act, to the halibut resource; and

**WHEREAS**, linking PSC limits to halibut abundance is more equitable that the prior static PSC limit because when BSAI halibut abundance declines, a static level of halibut PSC in the Amendment 80 fisheries can represent a greater proportion of total halibut removals in

the BSAI, particularly in Area 4CDE, and can reduce the proportion of halibut available for harvest in directed halibut fisheries; and

**WHEREAS,** A-123 provides incentives for the A-80 fleet to minimize halibut mortality at all times, and may provide indirect benefits to communities that rely on directed fishing for halibut; and

**WHEREAS,** the A-123 Final Rule was published on November 23, 2023, subsequent to which on December 19, 2023, the Groundfish Forum (GFF) in representation of the A-80 groundfish trawl sector filed a lawsuit in the United States District Court for the District of Alaska requesting that the Court vacate NMFS' decision approving A-123 and remanding it to NMFS to address serious errors; and

**WHEREAS,** on February 6, 2024, in recognition of the importance of supporting the NPFMC's action and NMFS' implementation of A-123, a group of halibut dependent stakeholders known as the Halibut Defense Alliance (HDA) moved to intervene in the lawsuit as defendants on the side of NMFS; and

**WHEREAS,** on April 26, 2024, the plaintiff, GFF, filed a Motion for Summary Judgment stating that A-123 is "arbitrary, capricious, and contrary to the law" and requested that it be vacated; and

**WHEREAS,** if successful, the plaintiff's motion would impair Kodiak's rural communities economic and social interests in the longer term, because juvenile halibut taken as bycatch in the BSAI cannot migrate to other areas such as the Gulf of Alaska to support either the halibut spawning stock or active fisheries there.

**NOW THEREFORE, BE IT RESOLVED,** that the Kodiak Archipelago Rural Regional Leadership Forum supports Amendment 123 linking the halibut PSC limit for the Amendment 80 fleet in the BSAI groundfish fisheries to halibut abundance.

**PASSED AND ADOPTED** this 17th day of June, 2024, by 26 participating members of the Kodiak Archipelago Rural Regional Leadership Forum.

**IN WITNESS THERETO:**

_____

Roberta Townsend Vennel
Forum Facilitator



# CITY OF ADAK, ALASKA

### RESOLUTION NO. 2024-005

**A RESOLUTION OF THE CITY OF ADAK CITY COUNCIL IN SUPPORT OF AMENDMENT 123 TO THE FISHERY MANAGEMENT PLAN (FMP) FOR GROUNDFISH OF THE BERING SEA AND ALEUTIAN ISLANDS (BSAI) MANAGEMENT AREA WHICH AMENDS REGULATIONS GOVERNING LIMITS ON THE PACIFIC HALIBUT PROHIBITED SPECIES CATCH (PSC) AND LINKS THE HALIBUT PSC LIMIT FOR THE AMENDMENT 80 COMMERCIAL GROUNDFISH TRAWL FLEET IN THE BSAI GROUNDFISH FISHERIES TO HALIBUT ABUNDANCE.**

**WHEREAS,** on December 2021, the North Pacific Fishery Management Council (NPFMC) recommended, and the National Marine Fisheries Service (NMFS) proposed, Amendment 123 (A-123) which links the halibut PSC limit for the Amendment 80 (A-80) commercial groundfish trawl fleet in the BSAI groundfish fisheries to halibut abundance thereby intending to minimize halibut PSC to the extent practicable while achieving optimum yield in the BSAI groundfish fisheries on a continuing basis; and

**WHEREAS,** based on a review of the scientific information and consideration of the revised National Standard guidelines, the NPFMC and NMFS determined that reducing halibut PSC with declining halibut abundance provides conservation benefits, as defined by the Magnuson-Stevens Act, to the halibut resource; and

**WHEREAS,** linking PSC limits to halibut abundance is more equitable that the prior static PSC limit because when BSAI halibut abundance declines, a static level of halibut PSC in the Amendment 80 fisheries can represent a greater proportion of total halibut removals in the BSAI, particularly in Area 4CDE, and can reduce the proportion of halibut available for harvest in directed halibut fisheries; and

**WHEREAS,** A-123 provides incentives for the A-80 fleet to minimize halibut mortality at all times, and may provide indirect benefits to communities that rely on directed fishing for halibut; and

**WHEREAS,** the halibut fishery is vital to Adak's local economy, its fishermen and working families and crews, its social fabric and well-being, and local subsistence users and beneficiaries; and

**WHEREAS,** in order to maximize the benefits of the halibut fishery to Adak, the City has invested in infrastructure that supports the community's local halibut fishermen and families including but not limited to chartering the nonprofit Adak Community Development Corporation in 2005 and further designating it as the Community Quota Entity for purposes of owning 4B Halibut and Sablefish IFQ; and

**WHEREAS,** the A-123 Final Rule was published on November 23, 2023, subsequent to which on December 19, 2023, the Groundfish Forum (GFF) in representation of the A-80 groundfish trawl sector filed a lawsuit in the United States District Court for the District of Alaska requesting that the Court vacate NMFS' decision approving A-123 and remanding it to NMFS to address serious errors; and

**WHEREAS,** on February 6, 2024, in recognition of the importance of supporting the NPFMC's action and NMFS' implementation of A-123, a group of halibut dependent stakeholders known as the Halibut Defense Alliance (HDA) moved to intervene in the lawsuit as defendants on the side of NMFS; and

Case 3:23-cv-00283-JMK   Document 42   Filed 06/27/24   Page 44 of 45   Exhibit 8 000001

**WHEREAS,** on April 26, 2024, the plaintiff, GFF, filed a Motion for Summary Judgment stating that A-123 is "arbitrary, capricious, and contrary to the law" and requested that it be vacated; and

**WHEREAS,** if successful, the plaintiff's motion would impair Adak's immediate economic interests through reduced revenues, depressed quota values, increased economic uncertainty, and reduced tax revenues from businesses either participating in or providing services to the halibut fishery, as the history under the prior bycatch limits confirms; and

**WHEREAS,** such outcome would also impair Adak's economic interests in the longer term, because juvenile halibut taken as bycatch in the BSAI cannot migrate to other areas to support either the halibut spawning stock or active fisheries there;

**NOW THEREFORE BE IT RESOLVED** the City Council approves Resolution 2024-005 in support of Amendment 123 linking the halibut PSC limit for the Amendment 80 fleet in the BSAI groundfish fisheries to halibut abundance.

**PASSED AND APPROVED** by a duly constituted quorum of the City Council this 18th day of June, 2024.


_____
Terri Douglas, Mayor

ATTEST:


_____
Layla V. Lekanoff, City Clerk

Exhibit 8 000002